## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DEMERRILL H.,

      Plaintiff,

      v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 25 CV 1725

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Demerrill H. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision [12] is denied, the Commissioner's motion for summary judgment [14] is granted, and the denial of benefits is affirmed.[1]

### Background

In February 2022, plaintiff applied for a period of disability and disability insurance benefits as well as supplemental social security income, alleging an onset date of January 1, 2020. [11-1] 18. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). [*Id*.] 18, 28–29. The Appeals Council denied review in January 2025, *see* [*id*.] 1–7, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. [11-1] 20. At step two, the ALJ determined that plaintiff had the following severe impairments: diabetes mellitus, disorder of muscle/ligament/fascia, spine degeneration and osteoarthritis. [*Id*.] 21–22. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id*.]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11-1], [11-2], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

22. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform sedentary work[3], except that plaintiff: (1) could only "lift and/or carry up to 10 pounds occasionally and lighter weights frequently[;]" (2) could "sit for about six out of eight hours, and can stand and/or walk off and on for a total of two out of eight hours[;]" (3) should "be allowed to use a cane at all times when walking for longer than five minutes[;]" (4) could "occasionally operate foot controls[;]" (5) could "occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch and crawl[;]" (6) could "never climb ladders, ropes or scaffolds[;]" (7) "should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.[;]" and (8) was "limited to working in nonhazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery." [*Id.*] 22–26. At step four, the ALJ held that plaintiff could not perform any of his past relevant work as an ambulance driver, stock clerk, or warehouse laborer. [*Id.*] 26–27. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: document preparer (62,000 jobs), order clerk (8,000 jobs), and telephone information clerk (43,000 jobs). [*Id.*] 27. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 28–29.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) failed to fully consider the effects of plaintiff's mental impairments, in combination with his physical impairments, on his ability to perform full time work; (2) did not properly account for plaintiff's widespread pain when fashioning plaintiff's RFC; and

---

[3] The Court notes that the ALJ did not actually use the word "sedentary" in his summary description of plaintiff's RFC. [11-1] 22–23. However, the assigned RFC aligns with the SSA regulations' definition of sedentary work. 20 C.F.R. § 404.1567. Further, in the narrative section of the ALJ's decision, he makes it clear that the RFC assigned would "limit[] the claimant to the sedentary exertional level[.]" [11-1] 21, 25.

2

(3) failed to properly assess the effects of plaintiff's obesity on his ability to sustain full-time work. *See* [12] 8–14. The Court rejects all three arguments.

### A. The ALJ's consideration of plaintiff's mental impairments does not constitute reversible error.

When fashioning an RFC, an ALJ must consider all "medically determinable impairments of which . . . [the ALJ is] aware, including . . . medically determinable impairments that are not 'severe[.]' " 20 C.F.R. § 404.1545(a)(2). This is because "[e]ven if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

Plaintiff underwent an approximately one-hour teleconference mental status consultative evaluation with Alvin House, Ph.D. After that exam, Dr. House endorsed diagnoses of adjustment disorder with depressed mood and generalized anxiety disorder. [11-2] 1031; [12] 5. The state agency psychological consultants who reviewed plaintiff's medical record, including Dr. House's report, found that plaintiff had mild limitations in "paragraph B" criteria,[4] [11-1] 94–96, 103–05, but assessed no related impacts on his RFC, [11-1] 99, 108.

In step two of his analysis, the ALJ acknowledged plaintiff's diagnoses, the state agency consultants' determinations, and plaintiff's testimony regarding depression and anxiety. [11-1] 21. After reviewing that evidence, the ALJ found plaintiff's mental impairments non-severe. [11-1] 21–22.

While plaintiff does not claim reversible error from the ALJ's finding at step two,[5] plaintiff argues that the ALJ erred by not considering plaintiff's mental limitations later in the decision when fashioning plaintiff's RFC. [12] 9. Plaintiff concedes that his mental impairments standing alone do not render him disabled, but he explains that his "multiple debilitating symptoms have an impact on his concentration and other mental functions[,]" and "[t]he ALJ's failure to even consider accommodating any [mental function limitations] . . . constitutes reversible error." [*Id.*] 9, 11. Plaintiff specifically identifies the ALJ's responsibility to assess deficiencies in concentration, persistence, or pace ("CPP"). [*Id.*] 9, 11.

It is true that the ALJ did not discuss plaintiff's mental impairments when fashioning plaintiff's RFC. However, in his step two analysis, the ALJ went further than simply finding plaintiff's mental impairments non-severe, he also determined

---

[4] "Paragraph B criteria" consists of plaintiff's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See e.g.*, [11-1] 96.

[5] Plaintiff wrote: "[t]he real harm occurred later in the decision [after step two], when the ALJ essentially ignored Plaintiff's mental impairments going forward." [12] 9.

that they did not impact plaintiff's functioning. After explaining which impairments he found severe, the ALJ wrote:

> None of the following, alone or combined with another complaint and/or impairment, results in more than mild, if any functional limitation(s) lasting or expected to last at least twelve continuous months (nor expected to result in death) and, thus, is not severe:

[11-1] 21. The ALJ next discussed the evidence related to plaintiff's other non-severe physical impairments, and finally turned to plaintiff's non-severe mental impairments:

> The claimant testified that at times he has depression because of his health issues, and anxiety[.] . . . He testified he was on Xanax last year but is no longer taking medication. . . . [W]hile the claimant was diagnosed with adjustment disorder with depressed mood and anxiety disorder during consultative examination . . . [T]here are no actual signs/symptoms of a mental disorder causing any functional limitation(s) documented[.]

[*Id.*]. The ALJ concluded this section of his discussion with:

> Therefore, I find the objective medical record does not show the claimant having any limitation(s) in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and/or adapting or managing oneself, lasting or expected to last at least twelve continuous months.

[*Id.*]. Based on this discussion and the record evidence, the Court finds that the ALJ's failure to discuss plaintiff's mental impairments in the RFC section of his decision does not constitute reversible error.

Plaintiff cites several Seventh Circuit cases for the proposition that the lack of discussion of non-severe impairments in the RFC section of the ALJ's opinion constitutes reversible error. However, none of those cases are applicable here. In *Yurt*, the ALJ failed to even mention plaintiff's non-disabling tension headaches at all in his decision or when questioning the vocational expert. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). In contrast, the ALJ here explicitly mentioned plaintiff's mental impairments in his decision. [11-1] 21. Moreover, in *Yurt* the Seventh Circuit stated "[a]lthough th[e] omission [of the tension headaches] standing alone probably would not have been grounds for remand, the ALJ may clarify on remand the effect of Yurt's tension headaches on his claim." *Yurt,* 758 F.3d at 860. In *Martinez*, the Seventh Circuit remanded two decisions because the ALJs' analyses were flawed in numerous respects, not just because they failed to consider the impact of non-severe

impairments on plaintiffs' RFCs. *Martinez*, 630 F.3d at 697–99.[6] In *Parker*, the Seventh Circuit explained that the ALJ committed elementary error by not "consider[ing] the cumulative effect of impairments not totally disabling[.]" *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010). But, unlike in *Parker*, in this case the ALJ stated, before discussing plaintiff's mental impairments (among other impairments), that "[n]one of the following, alone or combined with another complaint and/or impairment, results in more than mild, if any functional limitation(s) lasting or expected to last at least twelve continuous months."[7] [11-1] 21. Further, outside of the durational requirements, the ALJ explained that there was no documentation of "signs/symptoms of a mental disorder causing any functional limitation(s)[.]" [*Id.*] The ALJ concluded this section of his decision by finding the "objective medical record" did not support any mental functional limitations, including related to CPP. [*Id.*] 21–22.

Perhaps the ALJ's conclusion regarding the impact of plaintiff's mental impairments on his overall functioning, both alone and in combination with his other impairments, should have been restated in the RFC section of the opinion. But the Court reads the ALJ's opinion as a whole. *Henderson v. Kijakazi*, No. 22 C 3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)). As shown above, the ALJ did more at step two than simply conclude plaintiff's mental impairments were non-severe, he determined that they did not, alone or in combination, impact plaintiff's work-related functioning. And plaintiff fails to point to any evidence to the contrary or even propose a possible RFC limitation that the ALJ should have considered imposing. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (Any error in fashioning the RFC would have been harmless "[b]ecause [as] Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not

---

[6] In addition to not considering the interaction of non-severe impairments, ALJs' opinions regarding plaintiffs Martinez and Rider failed to discuss many other important parts of the record. Regarding Martinez the ALJ failed to discuss: (1) the fact she frequently cannot control her depression via medication as a consequence of her manic spells; (2) the record evidence that Martinez's severe arthritis makes using her hands difficult and thus the ALJ's conclusion that she "could be a 'hand assembler' amount to a bad joke[;]" and (3) the fact Martinez received care from her mother and three of her children before determining that Martinez "maintain(s) a very lifestyle in the process of caring for her five children[.]" *Martinez*, 630 F.3d at 697–98. Regarding Rider, the ALJ: (1) failed to give any reasons for not assigning controlling weight to plaintiff's treating physician; (2) ignored plaintiff's inability to pay as a reason for not having knee surgery; and (3) improperly relied on her enjoyment of watching her grandchildren as relevant to her mobility. *Id.* at 969–99.

[7] *See* Social Security Ruling (SSR) 23-1p, 2023 WL 8236247, at *5 (Nov. 7, 2023) ("Because of the duration requirement, we will not include limitations in the RFC assessment that completely resolve, or that we expect to completely resolve, within 12 months."). "Social Security Rulings lack the force and effect of law, but they are binding on ALJs." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). Here, while at certain points the ALJ mentioned the durational limitations, he also stated "there are no actual signs/symptoms of a mental disorder causing any functional limitation(s). [11-1] 21. The Court reads this statement as the ALJ finding that the plaintiff suffered from no limitations related to his mental health at all.

support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.").

Finally, if the Court were to remand on this issue it appears almost certain that the ALJ would just restate the relevant portion of his step two analysis in the RFC section and fashion an identical RFC. Thus, any error in the ALJ's decision on this basis is harmless. *See Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (explaining that an error in Social Security appeal is harmless if court can predict with great confidence what the result of remand will be).

For these reasons, the Court rejects plaintiff's first ground for remand.

### B. Plaintiff has not identified how the evidence of his pain demonstrates that the ALJ's RFC determination lacked substantial evidence.

In this section of his brief, plaintiff primarily[8] restates the evidence regarding his ongoing back pain and argues that the ALJ failed to build the requisite logical bridge between that evidence and his conclusion that plaintiff could engage in sedentary work. [12] 11–14. Particularly, plaintiff argues that the ALJ did not "truly factor[] in the effects of claimant's widespread pain on his ability to stand, walk, and even sit," when fashioning plaintiff's RFC. [*Id.*] 12.

First, the Court notes that nearly all the evidence referenced by plaintiff was present in the ALJ's decision. [11-1] 23–26. And while the ALJ did not "mention that the consultative examiner endorsed diagnoses of lower lumbar spine arthritis and a combination of weight related arthritis and trauma[,]" [12] 12, the ALJ did discuss the exam where those diagnoses were endorsed and specifically noted plaintiff's reports of pain during that exam. [11-1] 25. Further, "[a]n ALJ need not address every piece or category of evidence identified by a claimant," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), as long as he does not ignore evidence which runs contrary to his conclusions, *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Here the ALJ discussed at length the evidence related to plaintiff's back pain. [11-1] 24–25. The ALJ identified several medical records which recorded that plaintiff's pain was "exacerbated by standing and walking[.]" [*Id.*] 24. And the ALJ responded by fashioning an RFC with "environmental limitations . . . [to prevent] exacerbate[ing] pain/discomfort." [*Id.*] 26.

Second, the ALJ explained that he found plaintiff's statements about his pain not entirely consistent with the record. [*Id.*] 25. Specifically, plaintiff's orthopedic surgeon scheduled him for back surgery in August of 2022 after physical therapy

---

[8] The beginning and ending of this section appear to reference the ALJ's discussion regarding any and all of plaintiff's "deficit[s]" and "abnormalities[.]" [12] 12, 14. However, the actual argument only discusses plaintiff's pain related symptoms. [*Id.*] 11–14.

failed to lessen his pain, but that surgery was cancelled and had still not occurred as of May 2023. [11-1] 24–25. The ALJ acknowledged plaintiff's testimony that the surgery was canceled due to foot ulcers, but the ALJ appeared to not credit that explanation because nothing in the treatment record corroborated that plaintiff even had foot ulcers. [*Id.*] 25. Importantly, the ALJ specifically asked in the hearing to be pointed towards any records concerning the ulcers and, when plaintiff could not point to any, the ALJ provided plaintiff with the opportunity to submit corroborating records after the hearing. [*Id.*] 53, 55, 62, 68. But no corroborating records were submitted. [*Id.*] 25; [14] 10. The ALJ thus concluded, "I cannot find that the claimant's physical impairments and pain prevent him from performing all work." [11-1] 25.

Third, as the Commissioner points out and plaintiff does not refute, the ALJ assessed greater functional restrictions than did any physician. [14] 9; [15] 4. Without any medical opinion recommending greater restrictions than the ALJ, it is difficult for the Court to justify a reversal by any means other than improperly re-weighing the evidence. *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

In summary, this section of plaintiff's brief, rather than identifying evidence showing that the ALJ failed to build a logical bridge to his findings, appears to the Court to be a request to reweigh the evidence, which is not the Court's role. *Frank J. v. Saul*, No. 19 C 3176, 2020 WL 6447928, at *5 (N.D. Ill. Nov. 3, 2020).

For these reasons, the Court rejects plaintiff's second ground for remand.

## C.    The ALJ's discussion of plaintiff's obesity was not reversible error.

Finally, plaintiff claims that the ALJ's discussion of plaintiff's obesity was an inadequate "boilerplate statement[.]" [12] 14–15. The Court disagrees. The ALJ wrote:

> [T]here is no evidence that [plaintiff's obesity] significantly impairs his exertional function and non-exertional functions. Specifically, the claimant does not have a major dysfunction of a joint, disorder of the spine, or any specific neurological deficits that affect his exertional and non-exertional functions. Additionally, there is no evidence that the claimant's obesity has caused significant impairments related to the claimant's other functions, such as cardiovascular, respiratory, or digestive, that causes reoccurring, persistent, and uncontrollable effects on these functions (SSR 19-2p). I have limited the claimant to the sedentary exertional level with additional postural, environmental restrictions. I have considered the combined effects of severe and non-severe impairments in assessing the claimant's residual functional capacity pursuant to 20 CFR 404.1545 (a)(2) and 416.945(a)(2), as the

7

claimant is limited to the sedentary exertional level with additional postural, and environmental restrictions.

[11-1] 21. The excerpt above shows that the ALJ considered several obvious areas where obesity may impact an individual's functioning and stated that there is no evidence in the record of related significant impairment. [*Id.*]. And the ALJ explained that he considered all the combined effects of the severe and non-severe impairments when limiting plaintiff to the sedentary exertional level. [*Id.*]. This is enough for the Court to follow the ALJ's logical bridge regarding his RFC decision and the record evidence regarding obesity. *Firca v. Bisignano*, No. 22-CV-06092, 2025 WL 2785231, at *8 (N.D. Ill. Sept. 30, 2025) ("[T]he ALJ did more than include a single boilerplate statement; she cited numerous pieces of evidence, discussed obesity in the context of other conditions, and considered it in assessing the occupational limitations applicable to Plaintiff. . . . The ALJ thus sufficiently considered Plaintiff's obesity.").

If the plaintiff had identified evidence that the ALJ failed to consider, perhaps the analysis would be different. But plaintiff only references[9] SSA guidelines regarding how obesity can impact functioning and cites to one page in the hearing transcript when plaintiff discussed obesity in relation to his pain, stating that it "affects with my back, . . . the weight and the pressure that's on my back. I mean weight has a lot to do with it." [12] 14–15. As already discussed above, the ALJ did not commit reversible error regarding plaintiff's experience with pain when fashioning plaintiff's RFC. Finally, as the Commissioner points out, "plaintiff makes no attempt to show that the medical evidence supported greater functional restrictions because of his obesity; instead, he resorts to mere speculation as to the possibility, which is insufficient." [14] 11; *See also Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *9 (N.D. Ill. Dec. 16, 2019) (Affirming an ALJ's decision where "there appears to be no mention of obesity as a factor limiting plaintiff's ability to work anywhere in the record; plaintiff certainly doesn't direct to court to any.").

For these reasons, the Court rejects plaintiff's third ground for remand.

---

[9] Plaintiff also states: "[i]nterestingly, as the hearing was conducted telephonically, the ALJ did not have the opportunity to witness Plaintiff in person, or how an individual who weighs almost 300 pounds functions in a courtroom setting for almost an hour. Surely, that could have made an impression." [12] 15. But plaintiff omits the fact that he was given the option to have an in-person hearing and chose to proceed via telephone. [14] 12; [11-1] 196–99. To the extent that plaintiff is arguing that holding the hearing telephonically disadvantaged him, the Court finds that argument waived.

## Conclusion

Plaintiff's motion to reverse and remand [12] is denied, the Commissioner's motion for summary judgment [14] is granted, and the denial of benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 30, 2025**

9